NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**KELLY S. JENNINGS,**
*Petitioner,*

**v.**

**SOCIAL SECURITY ADMINISTRATION,**
*Respondent.*

---

2009-3127

---

Petition for review of the Merit Systems Protection Board in CB7521070026-T-1.

---

Decided: January 19, 2011

---

NORMAN JACKMAN, Jackman & Roth LLP of Lincoln, New Hampshire, argued for petitioner.

ELIZABETH M. HOSFORD, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were AUSTIN M. FULK, Trial Attorney, TONY WEST, Assistant Attorney General, and BRYANT M. SIMKIN, Assistant Director.

———————————

Before BRYSON, PLAGER, and CLEVENGER, *Circuit Judges*.

CLEVENGER, *Circuit Judge*.

Petitioner Kelly S. Jennings appeals from the final decision of the Merit Systems Protection Board ("Board") sustaining his removal from the Social Security Administration. *Jennings v. Soc. Sec. Admin.*, No. CB7521070026-T-1 (January 6, 2009). We *affirm*.

I

Jennings was employed by the Social Security Administration ("agency") as an Administrative Law Judge ("ALJ") in the agency's Atlanta North Office of Disability Review and Adjudication. Jennings was appointed to his position on July 24, 1994 pursuant to 5 U.S.C. § 3105. At the time, Jennings was a commissioned officer in the United States Army Reserve.

In an order dated December 31, 2002, the Department of the Army ordered Jennings to report to Fort McPherson, Georgia for active duty. The order noted that Jennings was being activated for one year "unless sooner released or unless extended" and expected to report on January 2, 2003. Jennings' tour of active duty was subsequently extended through December 31, 2005 by orders dated December 8, 2003, February 24, 2004, and October 27, 2004. Meanwhile, Jennings continued his employment as a full-time ALJ with the agency.

Jennings was deployed to Kuwait from April 2003 to July 2003. Upon his return, Jennings was ordered to the Army War College in Harrisburg, Pennsylvania for 15

days. Jennings requested appropriate leave from the agency and was granted leave for these absences. Similarly, Jennings requested and received leave for temporary duty stations in Florida, Kuwait, and Qatar in 2004 and 2005. Unbeknownst to the agency, when Jennings was not deployed to other locations from January 2003 through December 2005, he remained on active duty at Fort McPherson. Jennings spent nearly every non-deployed day during this period working at Fort McPherson from 6:00 A.M. until approximately 3:00 or 3:30 P.M. Jennings then traveled to the agency's Atlanta North Office to work up to six hours before taking work home with him to complete in the evenings and on weekends.

This case arises, in part, because Jennings signed a certification when he started working at the agency agreeing to work a fixed tour of duty from 8:00 A.M. to 4:30 P.M. Monday through Friday in the Atlanta North Office. Aside from three months in 2003 when Jennings was permitted to work remotely as part of the agency's Quality Assurance Review Project, Jennings' certification required him to be in attendance at the office during his fixed hours. Specifically, the fixed tour required Jennings to be available in the office for the core hours from 9:30 A.M. until 3:00 P.M. unless conducting a hearing. The undisputed facts demonstrate that Jennings was rarely, if ever, present in the Atlanta North Office during the core hours.

After receiving an anonymous report in March 2006 regarding Jennings' failure to work his fixed tour of duty due to his dual employment, the agency's Office of the Inspector General ("OIG") opened an investigation. The OIG completed its investigation in November 2006 and concluded that Jennings simultaneously worked for the agency and the United States Army and received pay

from both. The OIG further concluded that Jennings gave false statements to federal agents during an interview. The findings were submitted to Jennings' supervisors at the agency.

Upon receiving the OIG report, Regional Chief Judge Garmon, Jennings' second-line supervisor, had his office begin its own investigation. Judge Garmon personally interviewed Jennings on April 17, 2007 at the Atlanta North Office. An ALJ union local area representative, Judge Auslander, was also present for the interview. During an interview lasting approximately 30 minutes, Judge Garmon asked Jennings 17 questions off of a prepared form and "wrote down the pertinent parts that applied to the questions that I was asking him." Within a few days of the interview Judge Garmon prepared a formal summary of Jennings' answers.

Section 7521 provides that an agency ordinarily may not remove or reduce the pay of an administrative law judge without a Board hearing and determination that the action is for good cause. 5 U.S.C. § 7521. Thus, on August 14, 2007, the agency filed a formal complaint against Jennings with the Board seeking his removal. The agency charged Jennings with: (1) Failure to Fully Disclose His Active Duty Status; (2) Improper Dual Employment; (3) Lack of Candor; (4) Failure to Follow the Agency's Time and Attendance Procedures; and (5) Failure to Follow the Agency's "Flexiplace" Procedures. On August 20, 2007, the Board assigned Judge Cates of the National Labor Relations Board as the presiding judge. A hearing was held on March 17 and 18, 2008 after the completion of discovery by both parties. On June 16, 2008, Judge Cates concluded that the agency established all of the charges by a preponderance of the evidence and affirmed the agency's removal of Jennings. On January 6,

2009, the Board denied Jennings' petition for review and the initial decision of Judge Cates became the final decision of the Board. Jennings appeals.

## II

We may set aside a decision of the Board only when it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). We review matters of law without deference, and matters of fact to determine if substantial evidence supports the Board's findings.

## III

Jennings does not challenge the legal sufficiency of the charge of failure to disclose his active duty status. Instead, he renews on appeal his factual argument made to the Board claiming that he disclosed his active duty status by providing Judge Spivey, the Atlanta North Hearing Office Chief Judge, with all of his military orders. Jennings argues that the Board erred in failing to credit both the documentary and testimonial evidence he provided to demonstrate that the agency was aware of his active duty status. We review the Board's factual determination on this issue for substantial evidence. 5 U.S.C. § 7703(c).

A careful review of the record supports the Board's decision on this charge. Judge Spivey specifically testified that he was not aware that Jennings was on continuous active duty from January 2003 through December 2005. Jennings makes much of the fact that although Judge Spivey could not recall being provided military orders by

Jennings, Judge Spivey acknowledged at the hearing that it could have happened. However, this possibility does not counter Judge Spivey's specific testimony that he was not aware that Jennings was reporting daily to Fort McPherson for active duty during the three years in question. Further, Jennings admitted on cross examination that he previously testified at his deposition that he could not recall whether he gave the 2003 orders to Judge Spivey. Jennings also testified that he could not recall if he gave Judge Spivey a copy of his February 23, 2004 or October 27, 2004 orders. The evidence cited by Jennings to prove he provided his orders to Judge Spivey is contradicted by other evidence and at best inconclusive.

Moreover, the ALJ noted in his decision that Jennings appeared angry at the hearing and seemed to believe that the dual employment and related charges were simple technicalities. He stated that Jennings found it very difficult to give direct responses to questions and he had to caution Jennings not to give non-responsive and evasive answers. As a result, the ALJ concluded that "Jennings attempted to mold and shape his testimony to achieve a particular end at the expense of the complete full truth." He thus did not credit Jennings' testimony and found that Jennings did not fully disclose to the agency his active duty status with the United States Army.

Our review of factual determinations is limited by statute to assessing whether substantial evidence supports the Board's findings. Further, the Board's credibility determinations are "virtually unreviewable" on appeal. *Chambers v. Dep't of the Interior*, 515 F.3d 1362, 1370 (Fed. Cir. 2008). Under *Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987), several factors guide an administrative judge in deciding which of conflicting

testimony to credit. The ALJ noted in his decision that he "carefully observed the demeanor of the witnesses as they testified and [] relied on their demeanor in determining the credibility of their respective testimony." Thus, we must give deference to the ALJ's conclusion that Jennings did not fully disclose his active duty status to the agency as there is no testimony to demonstrate otherwise aside from Jennings' own testimony.

Finally, Jennings points to additional documents that he claims the Board ignored. Even ignoring the lack of reliability of these documents, they do not demonstrate that Jennings disclosed his continuous active duty status. Rather, the documents cited by Jennings merely reflect facts already conceded by the agency. It is agreed by the parties that the agency was aware that Jennings was periodically deployed during the period in question and that Jennings took appropriate leave during those deployments. The time records and leave slips for that period do not demonstrate that the agency was aware that Jennings remained in an active duty status at Fort McPherson during the remainder of the period. We therefore must affirm the Board's decision on this charge.

IV

On the second charge of improper dual employment, Jennings does not dispute the evident fact that he was working a full time ALJ job while on active duty in the Army and engaged in dual employment. Instead, Jennings' arguments on appeal target the agency's position that his dual employment was improper. Jennings correctly points out that the agency fails to cite a statute or regulation directly on point that prohibits full time agency employment while serving on active military duty. With no statutory target prohibiting dual employment to

shoot at, Jennings instead carefully distinguishes each dual compensation statute from his situation. The agency concedes that there is no statutory bar to Jennings' dual employment, but responds that the record contains unrebutted testimony showing an agency policy that prohibits such dual employment.

At the administrative hearing, a veteran agency Human Resource Specialist testified that the agency's policy prohibiting dual active military and full time civilian employment is based on decisions of the Comptroller General of the United States and on guidance provided by the Office of Personnel Management ("OPM"). Our review of these decisions and OPM's public notifications supports this testimony and demonstrates that there is a basis for the agency's conclusion that such dual employment is improper. It is clear from the record that Jennings was not able to satisfy his agency fixed tour of duty while simultaneously serving on active duty at Fort McPherson.

The agency made clear that it was basing its charge on long standing agency policy, and not on statutory or regulatory support, so Jennings' attempts to attack the agency's position based upon non-applicable statutes relating to dual compensation, not dual employment, miss the mark. We therefore affirm the Board's decision that Jennings engaged in improper dual employment.

V

Of the remaining charges, Jennings criticizes only the lack of candor charge as failing to be supported by substantial evidence. In particular, Jennings notes that his interview with Judge Garmon was not recorded or directly transcribed and that he was not afforded the opportunity to review the summary answers before the results of the

interview were submitted to his supervisor. While we question the judgment of the agency's decision not to record or directly transcribe Jennings' answers during the interview, we find substantial evidence to support the Board's decision that Jennings demonstrated a lack of candor in his responses.

Jennings argues that Judge Garmon's summary answers ascribe to him statements that were actually made by Judge Auslander, the union representative. Judge Auslander testified before the Board that the summary answers reflect Judge Aulander's answers to questions five and seven. The lack of candor charge is not based on answers to either of those questions, however, so any error in the summary answers to those questions is irrelevant.

As to the three questions that form the basis for the three specifications of the lack of candor charge—questions one, four, and fourteen—Judge Auslander testified that the summary answers do not reflect the entire answer that Jennings provided. Question one, which corresponds to the first specification, asked Mr. Jennings if he was on active duty from January 2003 through December 2005. Although the summary answers reflect that Jennings never directly answered that question, Judge Auslander testified that Jennings gave a direct answer after being asked a follow-up question. Questions four and fourteen correspond to the second and third specifications. Judge Auslander testified that he did not believe that the summary answers reflect the entirety of Jennings' answers to those two questions, but he did not indicate what information was omitted. Thus, Judge Auslander's testimony that the summary answers to questions four and fourteen were incomplete provided nothing to complete the record or to contradict Judge

Garmon's testimony that Jennings was not fully candid and truthful in his answers to those questions.

As previously noted, our review of credibility determinations is limited and the Board's decision reflects a clear determination that Judge Garmon's testimony regarding the interview appeared more candid and truthful than that of Jennings. Further, Jennings specifically tempered his criticisms of the interview process by testifying that several of the summary answers "sound[ed] like something that I would have said" or "sound[ed] generally [like] what I probably would have said." Thus, we affirm the Board's decision on the lack of candor charge.

## VI

Jennings also claims that the penalty of removal was improper. In particular, though Jennings concedes that he failed to follow the agency's "flexiplace" procedures, including failing to submit a written election to subscribe to the program, he argues that his removal for the charge of his failure to follow "flexiplace" procedures shows that he was subjected to disparate treatment by the agency. Jennings points to a September 2007 OIG document titled Management Advisory Report: Adequacy of the Administrative Practices in the Atlanta North Office of Disability Adjudication and Review and notes that the OIG found three agency ALJs in the Atlanta North Office were failing to properly follow "flexiplace" procedures. He argues that the agency's failure to discipline these ALJs demonstrates that his removal is an inappropriate penalty for the charge.

Our review of the record and the agency's discovery responses shows that Jennings' disparate treatment argument is flawed. The ALJs mentioned in the report

were discussed in the context of many administrative failures discovered by the OIG's audit of the Atlanta North Office. In addition to the "flexiplace" issues, the audit revealed that many other internal controls and administrative procedures were not functioning as intended. However, the administrative failures cited in the report do not suggest any intentional abuse of the process or an attempt to circumvent the internal controls.

Here, Jennings was charged with his failure to follow the "flexiplace" procedures in conjunction with his decision to work as an agency ALJ while serving on active duty in the military. The charge arose because Jennings attempted to use the "flexiplace" program as an answer to why he was absent from the Atlanta North Office during the required core hours. However, his failure to submit the required paperwork and abide by the procedures of the "flexiplace" program supports the agency's position that it did not consider him to be enrolled in the program. If Jennings was attempting to participate in the program, as he claims, then his failure to follow the proper procedures is just an additional factor warranting removal along with the more serious charges of his failure to disclose his active duty status and continuous dual employment. There is no evidence in the record demonstrating that the ALJs mentioned in the Atlanta North Office audit are similarly situated to Jennings and we find no disparate treatment requiring us to remand for reconsideration of the removal decision.

Jennings also argues that the agency failed to consider the factors laid out in *Douglas v. Veterans Administration*, 5 M.S.P.R. 313 (1981), when requesting his removal. However, the agency's Statement of Charges and Specifications need not analyze the *Douglas* factors. Instead, it is the Board's responsibility to make the de-

termination of whether good cause exists for removal. *See* 5 U.S.C. § 7521(a) ("An action may be taken against an administrative law judge appointed under section 3105 of this title by the agency in which the administrative law judge is employed only for good cause established and determined by the Merit Systems Protection Board on the record after opportunity for hearing before the Board."). The Board found that Jennings' "willful conduct of long duration and intentional concealment from and failure to fully disclose the nature of his military obligations to the agency constitutes deceit for personal gain and warrants his removal." We find no fault with the Board's conclusion that removal is the appropriate penalty in this case.

## VII

Finally, Jennings complains about the agency's post-removal determinations to place him on leave without pay for the period in question and seize funds from his retirement accounts. As those issues were not before the Board in this matter, they are not properly before us. Thus, we decline to express an opinion on these actions. Similarly, Jennings' remaining arguments about the ALJ, including attacking the ALJ's qualifications and claiming a conflict of interest, were not timely raised before the Board and are thus waived. All remaining motions are denied as moot.

## COSTS

No costs.